303 So.2d 286 (1973)
Norris SMITH
v.
UNITED FIRE INSURANCE COMPANY et al.
No. 9493.
Court of Appeal of Louisiana, First Circuit.
December 17, 1973.
Writ Refused April 11, 1974.
*287 John F. McKay, Baton Rouge, for appellant.
A. J. Spedale, Baton Rouge, for appellees.
Before LOTTINGER, BLANCHE and CRAIN, JJ.
BLANCHE, Judge.
This is a suit by plaintiff, Norris Smith, for the wrongful payment of the proceeds of an insurance policy by defendant, United Fire Insurance Company.
Plaintiff sold certain immovable property located in the Parish of East Baton Rouge, State of Louisiana, to defendant, Hattie Lee Powell. The consideration for the sale was the sum of $6,250, of which the sum of $250 was paid in cash. For the balance of the purchase price plaintiff accepted a note in the sum of $6,000 dated June 6, 1968, payable in monthly installments of $100 each and bearing interest at the rate of seven and one-half percent per annum. The note was made and endorsed by Hattie Lee Powell and also endorsed by the defendant, Henry O. Scott. The note was secured by a mortgage executed on the property by defendant, Hattie Lee Powell, and was paraphed for identification with the mortgage. Under the terms of the mortgage, the defendant, Hattie Lee Powell, was obligated to obtain insurance for losses by fire and other casualties in an amount equal to the unpaid balance on the note and to deliver the policy to the holder of the note. This she failed to do and plaintiff purchased fire insurance on the property, naming himself as the insured, from Gulf Insurance Company in the amount of $6,000. On November 3, 1969, Henry Scott, the defendant and endorser on the note, also took out a policy of fire insurance with United Fire Insurance Company in the amount of $4,000 covering the same property wherein he was named as the insured. Neither plaintiff, Norris Smith, nor defendant, Henry Scott, was aware of the insurance obtained by the other, and neither named plaintiff as the loss-payee. On or about March 3, 1970, a fire caused by a bolt of lightning completely destroyed the improvements on the premises.
On April 1, 1970, United Fire Insurance Company was notified by letter from plaintiff's attorney that Norris Smith held a mortgage on the property. In response to this notice, United Fire Insurance Company, by letter dated April 6, 1970, wrote plaintiff's attorney and acknowledged the claim of Smith and agreed to hold the matter in abeyance, stating therein that they would take no action whatsoever in the matter until they heard from plaintiff by letter that an amicable settlement had been made with all parties involved in the amount due to each individual under the policy.
Despite the foregoing assurance by the defendant, United Fire, without further notice to plaintiff, paid Powell and Scott the sum of $3,300[1] as the proceeds of the policy.
*288 At the time of the loss by fire, Powell was indebted unto plaintiff in the sum of $6,594.76 and plaintiff had turned over the mortgage note to his counsel for collection, although no suit had been filed thereon. Finally, on August 14, 1970, this suit was filed wherein plaintiff claims that United Fire wrongfully paid Powell and Scott the proceeds of the policy, in spite of the written assurance from United to plaintiff that the policy would not be paid without prior notice to plaintiff's attorney.
Subsequently, plaintiff foreclosed the property and the lots were sold as unimproved property at a Sheriff's sale, the sum of $691.47 being credited on the judgment. A settlement was reached on January 2, 1970, between plaintiff and Gulf Insurance Company wherein for the sum of $1,750 plaintiff granted a release to Gulf but reserved his rights against all the other parties.
The principal issue raised on this appeal is whether Norris Smith, mortgagee-plaintiff-appellee, is entitled to the proceeds of the insurance policy issued by United Fire to Henry Scott on the mortgaged property. The trial court held that he was and rendered judgment in plaintiff's favor. From that judgment the defendants perfected this appeal, contending that they were bound by contract to pay the proceeds of the policy to their insured Scott. The plaintiff also appealed, maintaining that the trial judge committed error by his failure to award penalties and attorney's fees for the arbitrary and capricious action of the insurer in failing to pay plaintiff's claim.
The trial judge reasoned in his opinion that Scott was bound by the terms of the mortgage because he endorsed the mortgage note. In another part of the opinion he reasoned that plaintiff had an equitable lien on the proceeds of the policy taken out by Scott. In both instances he was in error and the judgment will be reversed.
If Scott were bound by the terms of the mortgage because he endorsed the note, his obligation would have arisen out of the mortgage contract. Consequently, there would have been no excuse to apply equitable principles, as the contract would have been the law of the parties. However, Scott did not sign the mortgage, he signed the note as an accommodation party for Hattie Lee Powell. As an accommodation endorser, he loaned his name to Hattie Lee Powell and became liable on the note to the holder thereof to do one thing, namely, pay in the event of the maker's default. LSA-R.S. 7:29.[2] The mortgage as an accessory to the principal obligation was no more than a security device executed by the maker of the note to secure the obligation, LSA-C.C. Art. 3284[3]; and it imposed obligations on the maker of the note other than the payment of money. One such obligation was to further secure the principal obligation by taking out a policy of insurance and making the proceeds thereof payable to the mortgagee in the event of the destruction of the thing so secured as his interest may have appeared. As noted above, the endorser's obligation was singular and imposed no other obligation upon him other than to pay the note in the event of the maker's default.
*289 The plaintiff cites 46 C.J.S. Insurance § 1147, p. 31, and 5 Appleman Ins. L & P. (1941), Sec. 3381, pp. 527-528, which state the general rule that the mortgagee has an equitable lien on the proceeds of a fire insurance policy procured by the mortgagee pursuant to a covenant to insure for the mortgagee's benefit, although the policy is not made payable to the mortgagee. This doctrine has been said to have obtained in Louisiana since 1880 in the case of Wheeler v. Factors' and Traders' Insurance Company, 101 U.S. 439, 25 L.Ed. 1055 (1880), and emanated from "the moral maxim of the law that no one ought to enrich himself at the expense of another." LSA-C.C. Art. 1965.
However, the rule has no application to this case, as Scott is not enriching himself at the expense of another, since he took out insurance for his contingent liability on the note which he endorsed. Were he called upon to pay the note, he would then have recourse against Hattie Lee Powell, the maker, and to that extent it cannot be said that the insurance taken out by Scott was solely for the plaintiff's benefit. Therefore, except to answer serious argument of counsel, our exercise concerning equitable principles really has little application to the case because Scott was not a mortgagor and made no agreement to take out insurance for the benefit of another. The insurance contract sued on here was solely a personal contract between Scott and United, and the insurable interest of Scott therein made it an enforceable contract. Accordingly, any payment of these proceeds to plaintiff would have been at the risk of penalties, interest and attorney's fees.
For the above and foregoing reasons, the judgment of the trial court is reversed, and judgment is rendered herein dismissing plaintiff's suit at plaintiff's costs.
Reversed and rendered.
NOTES
[1] We are unable to tell from the record why the foregoing settlement was less than the amount of the insurance coverage.
[2] LSA-R.S. 7:29 reads as follows:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."
[3] LSA-C.C. Art. 3284 states as follows:

"The mortgage is accessory to a principal obligation which it is designed to strengthen, and of which it is to secure the execution."